IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

RURBANC DATA SYSTEMS, INC.,

        Plaintiff,        Case No. 3:11 CV 366

-vs-

                          MEMORANDUM OPINION

NEW CORE HOLDINGS, INC.,

        Defendant.

KATZ, J.

Plaintiff Rurbanc Data Systems, Inc. ("RDSI") sued Defendant New Core Holdings, Inc. ("New Core") for breach of merger agreement, breach of loan agreements and promissory notes, enforcement in rights in collateral, and unjust enrichment. New Core counterclaimed for breach of merger agreement (count I), breach of reseller or software license and support agreement (count II), and breach of fiduciary duty (count III).

Currently before the Court is RDSI's FED. R. CIV. P. 12(b)(6) motion to dismiss New Core's counterclaims. (Doc. 30). For the reasons stated herein, RDSI's motion to dismiss will be granted in part and denied in part.

**I. Background**

RDSI is an Ohio company in the business of providing computer software to banking institutions for data and item processing. (Doc. 1-2 at 1, 2; Doc. 25 at 6). New Core is a computer software development company from Florida. (*Id*.).

On April 25, 2009, the parties entered into an Agreement and Plan of Merger in which a wholly-owned subsidiary of RDSI would acquire New Core's outstanding stock. (Doc. 1-2 at 2; Doc. 25 at 10). As part of the merger, the parties entered into a Reseller Agreement on April 25, 2009 which gave RDSI the exclusive right to market, install and support a specific software

developed by New Core called "Single Source." (Doc. 25-3 at 4). Both agreements are governed by Ohio law. (Doc. 25-1; Doc. 25-2).

Single Source is a multi-function software program targeted to community banks. (Doc. 25 at 8, 9). The parties' objective was to use Single Source to eliminate third-party software in exchange for a single, streamlined program with integrated capabilities. (Doc. 25 at 9). Although Single Source performed at functional levels for small to mid-size community banks at the time of the agreement, the parties planned to expand and market to large community banks in the future. (*Id*.).

In conjunction with the Plan of Merger, the parties also entered into a Subordinated Loan Agreement on April 25, 2009 in which RDSI would loan an aggregate principal amount of five million dollars to New Core. (Doc. 1-2 at 2, 137; Doc. 25-3 at 1). The Agreement was also to be governed by Ohio law. (Doc. 25-3). On April 29, 2009, RDSI executed a promissory note for three million dollars to New Core as an initial advance. (Doc. 1-2 at 2-3). On February 26, 2010 and March 29, 2010, RDSI executed two additional promissory notes to New Core for the amount of one hundred thirty-one thousand dollars each. (Doc. 1-2 at 2).

On May 28, 2010, RDSI announced that its planned merger with New Core would not be completed, and for reasons disputed by the parties, the merger was never consummated. (Doc. 1-2 at 4; Doc. 25 at 14, 15). RDSI contends that the merger was not completed due to New Core's material breach of the Merger Agreement and its default on the Subordinated Loan Agreement and promissory notes. (Doc. 1-2 at 4-7). RDSI alleges New Core breached the agreements in several respects, including New Core's alleged failure to use reasonable efforts in the continued development of Single Source, its insolvency, and its inability to pay its debt to RDSI. (Doc. 1-2 at 4). New Core attributes the failure of the Merger Agreement to issues stemming from RDSI's decision to attempt one of the most difficult bank conversions to Single Source first, which

2

ultimately had a "disastrous" impact on New Core's business. (Doc. 25 at 13-14). Further, New Core maintains RDSI stopped performing its contractual obligations to promote Single Source, decided to unilaterally cancel the merger and fabricated a breach of contract claim against New Core to avoid paying the termination fee under the Merger Agreement. (Doc. 25 at 14, 15).

On January 18, 2011, RDSI filed this lawsuit in the Court of Common Pleas in Defiance County Ohio asserting "claims for [New Core's] breach of loan agreements and promissory notes, for the enforcement in rights in collateral held or controlled by the defendant, breach of a merger agreement, and unjust enrichment." (Doc. 1-2 at 1; Doc. 30 at 3). New Core removed the action to this Court on diversity jurisdiction on February 18, 2011. (Doc. 1).

On January 20, 2012, New Core counterclaimed against RDSI for breach of merger agreement, breach of reseller agreement and breach of fiduciary duty. (Doc. 25). RDSI filed the instant FED. R. CIV. P. 12(b)(6) motion to dismiss New Core's counterclaims on February 3, 2012. (Doc. 30). New Core filed an opposition on February 22, 2012. (Doc. 32), which was followed by RDSI's reply on March 12, 2012. (Doc. 35).

**II. Standard of Review**

FED. R. CIV. P. 12(b)(6) provides for dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Courts must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of*

3

*Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Twombly*, 550 U.S. at 555 (stating that the complaint must contain more than "a formulaic recitation of the elements of the cause of action"). A complaint must state sufficient facts to, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

In conjunction with this standard, the Court is cognizant that FED. R. CIV. P. 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the ground upon which it rests.'" *Erickson*, 551 U.S. at 93 (citing *Twombly*, 550 U.S. at 596); see also *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295-96 (6th Cir. 2008). The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

**III. Discussion**

**A. Contract Claims**

RDSI now acknowledges the sufficiency of New Core's pleading on count I (breach of merger agreement) and count II (breach of reseller agreement) (collectively "contract claims").

RDSI's underlying rationale for its motion to dismiss the contract claims was New Core's failure to respond to RDSI's requests for admission. As a result, RDSI contended New Core's failure to respond deemed several dispositive issues admitted under FED. R. CIV. P. 36(a). However, RDSI recognized in its reply that the underlying theory for its motion was removed by this Court's March 5, 2012 order permitting New Core to file late responses to requests for admission. (Doc. 34). Accordingly, RDSI's motion to dismiss counts I and II of New Core's counterclaim is denied as moot.

**B. Fiduciary Duty Claim**

RDSI moves to dismiss New Core's counterclaim for breach of fiduciary duty. RDSI argues that New Core cannot establish the existence of a fiduciary relationship, as none of the parties' written agreements denote one. Conversely, New Core asserts that a *de facto* fiduciary relationship existed between the parties. RDSI replies, however, that any purported *de facto* fiduciary relationship is precluded by the written agreements' integration clauses, and in any event, argues that New Core has not alleged sufficient facts to establish a *de facto* fiduciary relationship.

A fiduciary relationship is recognized by the Ohio Supreme Court as "a relationship 'in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.'" *Ed Schory & Sons, Inc. v. Society Nat'l Bank*, 662 N.E.2d 1074, 1081 (Ohio 1996) (quoting *In re Termination of Employment of Pratt*, 321 N.E.2d 603, 609 (Ohio 1974)). "A fiduciary duty may arise through formal agreement or through an informal relationship, a *de facto* fiduciary relationship." *Capogreco v. Pro Ins. Agency, Inc.*, 2007 WL 4510266, at *11 (N.D. Ohio Dec. 18, 2007). New Core contends that the latter, a *de facto* fiduciary relationship, existed between the parties.

5

Ohio law provides that a *de facto* fiduciary duty exists "where a 'person comes to rely on and trust another in his important affairs and the relations there involved are not necessarily legal, but may be moral, social, domestic, or merely personal.'" *Anchor v. O'Toole*, 94 F.3d 1014, 1023-24 (6th Cir. 1996) (quoting *Craggett v. Adell Ins. Agency*, 635 N.E.2d 1326, 1331 (Ohio Ct. App. 1993)). Importantly, a *de facto* fiduciary relationship cannot be unilateral, as "[t]he Ohio Supreme Court has explained that a fiduciary duty may arise from an informal relationship only if both parties understand that a special trust or confidence has been reposed." *Anchor*, 94 F.3d at 1024 (citing *Craggett*, 635 N.E.2d at 1331).

In the instant matter, New Core's allegations regarding a *de facto* fiduciary relationship are insufficient to survive RDSI's motion to dismiss. First, New Core's conclusory allegations of a fiduciary relationship, and New Core's recitation of the definition of *de facto* fiduciary relationship are insufficient. *Twombly*, 550 U.S. at 555 (plaintiff's pleading obligations require "more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do."). Moreover, New Core's factual allegations do not plausibly establish the existence of a *de facto* fiduciary duty. *Iqbal*, 556 U.S. at 678 (complaint must state sufficient facts such that the claim "is plausible on its face."). New Core stresses that RDSI described the parties' relationship as "strategic," and that "RDSI took over the sale and marketing of Single Source and . . . was working toward a merger with New Core." (Doc. 32 at 8). Despite this, RDSI's sales and marketing of Single Source was required under the Reseller Agreement.[1] *See Stuckey v. Online Resources Corp.*,

---

[1] Typically, in considering a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the court's inquiry is limited to the content of the pleadings. *Macula v. Lawyers Title Ins. Corp.*, No. 1:07 CV 1545, 2008 WL 3874686, at *2 (N.D. Ohio Aug. 14, 2008). However, as RDSI correctly cites, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account." *Macula*, 2008 WL 3874686, at *2; *see also*
(continued...)

No. 2:08– cv–1188, 2009 U.S. Dist. LEXIS 115625, at *37-*38 (S.D. Ohio Dec. 11, 2009) (no *de facto* fiduciary duty evidenced by emails committing company to discharge duties already imposed by merger agreement). Moreover, New Core fails to explain how RDSI's description of the parties' relationship as "strategic" demonstrates that RDSI elevated the relationship beyond one created by an arms-length transaction to one of special trust and confidence. *See id*; *see also Scotts*, 606 F. Supp. 2d at 738 (citing *Landskroner v. Landskroner*, 797 N.E.2d 1002, 1013 (Ohio Ct. App. 2003)) ("[U]nder Ohio law, in the absence of special circumstances, no fiduciary relationship exists between parties negotiating an arm's-length commercial transaction . . . ."); *Shaver v. Std. Oil Co.*, 733 N.E.2d 645, 647 (Ohio Ct. App. 1999) ("A contractual relationship alone does not automatically create a fiduciary duty."). Thus, New Core has failed to state a claim for breach of fiduciary duty.

**IV. Conclusion**

For the foregoing reasons, RDSI's motion to dismiss is granted in part and denied in part. (Doc. 30). The motion is granted as to New Core's claim for breach of fiduciary duty (count III), and is denied as moot as to New Core's claims for breach of contract (counts I & II).

IT IS SO ORDERED.

    S/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE

---

(...continued)
*Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001); *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997). Therefore, this Court can properly consider the parties' written agreements in deciding RDSI's motion to dismiss. *See* Merger Agreement, (Doc. 25-1); Reseller Agreement (Doc. 25-2); Subordinated Loan Agreement (Doc. 25-3).